UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-101-H

ROGER KEY                                                                                              PLAINTIFF

V.

SPEEDWAY SUPERAMERICA LLC                                                      DEFENDANTS
and CATHERINE WOOD

**MEMORANDUM OPINION**

Plaintiff Roger Key ("Key") was terminated from his job as a store manager for Defendant Speedway Superamerica LLC (Speedway"). He claims his termination was discriminatory under the Family and Medical Leave Act of 1993 ("FMLA") and has sued Speedway and his direct supervisor, Catherine "Kay" Wood ("Wood"). All parties have now filed for summary judgment. For the following reasons, the Court must conclude that Plaintiff has insufficient evidence to make his case to the jury. The Court will sustain Defendants' motion for summary judgment and dismiss these claims.

I.

Key began working for Checker Oil in 1978 as a store manager. Checker Oil was eventually absorbed by Marathon Oil Corporation, which operates Speedway gas stations and convenience stores throughout the United States. Key held a variety of positions with Speedway and Marathon until 1998, when he worked for another company for several years. He was rehired by Speedway in January 2002. He soon became an advanced district manager, but was later demoted to district manager because of an evaluation that rated his performance only

"satisfactory."

From August 24, 2004 through October 4, 2004, Key was on FMLA leave from Speedway. When he returned, he was assigned to Speedway's "Loyalty Program" for several months. In January 2005, he was assigned to be store manager for Store #9645, located in Louisville. In that position, Wood was his direct supervisor. This reassignment represented a demotion for Key and resulted in a salary decrease. In August 2005, Wood evaluated Key's performance as store manage to be "very satisfactory."

However, about that same time, inventory losses became an issue at Store #9645. An audit was completed of Key's store on October 24, 2005. That audit showed an inventory shortage of approximately $10,000. The next day, Key informed Wood that he thought the beer count would also be "bad." Wood immediately instructed him to count the beer inventory and let her know the results. On October 31, 2005, Key told Wood that he believed that a beer inventory count at Store #9645 would also show a significant shortage. Key also informed Wood that he planned to take a vacation during the week of November 7. Wood in turn informed Key that the beer inventory count needed to be completed before she would consider Key's vacation request.

On November 4, 2005, Key left a voice mail for Wood, reminding her of his planned vacation and acknowledging that he needed to complete the beer inventory count. He told Key the beer inventory count would be completed on Saturday, November 5. Not having heard from Key on November 5, Wood again called Key, who promised that he would complete the beer count that day. Wood instructed Key that once he finished the beer count, he was to speak with her directly and not leave her a message. Later that day, Key had his assistant manager, Karl

Carp, conduct a beer inventory at the store. After the inventory was completed, Key called Wood and left a message for her around 6 P.M., saying that the beer count was "really, really bad." Key also informed Wood that he would not be at the store the next day, but would be in on November 7. It was on November 5 that Wood states that she decided to recommend Key's firing.

On Monday, November 7, 2005, Key left a voice mail for Wood at 11:08 A.M., saying he would be absent from work that day after his doctor found he had high blood pressure. Key said, however, that he would be at work the next day, November 8. Also on November 7, a company auditor conducted a beer inventory count at the store and found a significant shortfall: a $20,000 loss for the store, $15,000 of which was beer. After receiving the audit report, Wood called John Reynolds, the Regional Manager, to inform him of her decision to terminate Key's employment.

On Tuesday, November 8, Key left a voice mail for Wood at 9:53 A.M., saying that he was still ill and would not be in to work that day. Key implied that it was in his plan "this week" to come into work and work on the inventory concerns. That same day, the company auditor informed Wood that the beer inventory count showed significant shortages. It was on November 8, Wood says, that she finalized her decision to fire Key.

On Wednesday, November 9, Key formally requested FMLA leave via a fax to the company's Human Resources Field Representative and a voice mail left for Wood. After attempting to meet with Key in person to deliver his termination notice, Wood finally elected to send a termination notice via letter. Key received his termination notice on November 15.

II.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories,

3

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view all evidence, all facts, and any inferences that may be drawn in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 572, 587 (1986). "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (internal quotations and citations omitted).

### III.

Key's basic claim is that he was terminated because he attempted to exercise his rights under the FMLA. Although Defendant's motion for summary judgment seemingly attempts to expand on this theory, the Complaint asserts only a claim that Key's termination was "unlawful" and "discriminatory" under the FMLA. Under this theory it is unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA. *See* 29 U.S.C. § 2615(a)(2). Key therefore must show that Speedway and/or Wood terminated him <u>because</u> he invoked his FMLA rights. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Key has presented no direct evidence of discriminatory or retaliatory intent. Therefore, the Court will approach Key's case using the *McDonnell Douglas* burden-shifting framework, following the Sixth Circuit's ruling on FMLA cases involving indirect evidence. *See Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001). "Under McDonnell

Douglas, a plaintiff relying upon indirect evidence must first establish a *prima facie* case. The employer then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action." *Smith v. ACO, Inc.*, 368 F.Supp.2d 721, 731 (E.D. Mich. 2005) (citing *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003)).

To make a *prima facie* case of retaliation under the FMLA, Key must establish: (1) that he engaged in a statutorily protected activity; (2) that Speedway was aware of his protected activity; (3) that Key suffered an adverse employment action; and (4) that a causal connection existed between the protected activity and the adverse employment action. *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Defendants argue that Key cannot establish a *prima facie* case because his statutorily protected activity (requesting FMLA leave) did not occur until *after* the decision to fire him had been made. Defendants argue that this is the case because the voice mail messages Key left for Wood on November 7 and November 8 did not sufficiently alert Speedway or Wood to the fact that Key was requesting FMLA leave, and that the decision to fire Key was made before his formal request for FMLA leave on November 9. That may very well be true. Regardless, the case can be resolved more directly.

Assuming that Key has established a *prima facie* case, the second prong of the *McDonnell-Douglas* framework would require Wood and Speedway to offer a sufficient legitimate, nondiscriminatory reason for Key's termination. Wood stated in her deposition that she had terminated Key because of his failure to effectively control his inventory and because he

was insubordinate when he left a message for November 5 instead of speaking with her directly as she had requested. Wood also stated that she was frustrated that Key had Karl Carp conduct the beer inventory count instead of doing it himself. Leaving aside altogether whatever frustrations Wood had with Key's planned leave or absences due to illness, the inventory short falls present ample legitimate, nondiscriminatory reasons for Key's termination.

Therefore, the burden falls on Key to show that these nondiscriminatory reasons were merely pretextual and that unlawful discrimination was the real reason for his dismissal. Defendant argues that a termination based in part of an absence covered by the FMLA, even in combination with other factors, may still violate the FMLA. However, Defendant misstates the applicable law. Even if an employee has requested and been granted FMLA leave, that employee still may be terminated for reasons unrelated to the FMLA-qualifying leave. *See Arban v. West Pub.* Corp., 345 F.3d 390, 401 (6th Cir. 2003); *Phelan v. City of Chicago*, 347 F.3d 679, 683 (7th Cir. 2003). Plaintiff has presented no actual evidence that Defendants' concerns about Key's inventory control and insubordination were simply pretextual reasons for his dismissal. He has no evidence that others similarly situated were treated differently. Indeed, the record in replete with evidence that these concerns were legitimate, significant and very real. No one can dispute that such concerns would be sufficient to justify termination.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record